**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PARMINDER BAJAJ,                )
      4343 Lee Hwy, # 805        )
      Arlington, VA 22207         )
                                              )
      Plaintiff,                          )
                                              )        CASE NO. _____
v.                                              )        **JURY TRIAL DEMANDED**
                                              )
U.S. DEPARTMENT OF HOUSING  )
AND URBAN DEVELOPMENT      )
(HUD)                                        )
      451 7th Street S.W.             )
      Washington, D.C. 20410      )
                                              )
and                                           )
                                              )
MARCIA FUDGE,                      )
      in her official capacity as      )
      Secretary and Head of the    )
      UNITED STATES                   )
      DEPARTMENT OF HOUSING   )
      AND URBAN DEVELOPMENT )
      (HUD)                                    )
      Office of the Secretary         )
      451 7th Street, S.W.            )
      Washington, D.C. 20410      )
                                              )
      Defendants.                       )

## <u>COMPLAINT</u>

Plaintiff, Parminder Bajaj, brings this civil action against the U.S. Department of

Housing and Urban Development ("HUD") and Marcia Fudge, the Secretary of HUD

(collectively, the "Defendants").  In support of her complaint, Plaintiff states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3).  Venue is appropriate in this Court as provided in 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

2.       Plaintiff, Parminder Bajaj, is an Indian woman, over the age of 40 years old.  She was born in Pathankot, India, and currently resides in Arlington, Virginia, which is in Arlington County.  Plaintiff Bajaj is a member of a protected class.

3.      Defendant, U.S. Department of Housing and Urban Development ("HUD") is Plaintiff's former employer.  HUD is a federal government agency with its headquarters located in Washington, D.C.  HUD is an "employer" as defined in Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, as amended, and the Rehabilitation Act of 1973, as amended.

4.      Defendant Marcia Fudge is the Secretary of the U.S. Department of Housing and Urban Development ("HUD") and is named as a defendant in this action in her official capacity as Secretary and Head of HUD.  HUD is headquartered in Washington, D.C., and upon information and belief, Defendant Fudge's primary office is in Washington, D.C.

5.      As Secretary of HUD, Defendant Fudge directs, approves, and/or is responsible for all official actions at HUD.

**FACTS**

6.      Plaintiff adopts and realleges the allegations contained in Paragraphs 1 – 5 above as if fully set forth herein.

7.      On October 1, 2016, Plaintiff began working as an IT Specialist at the Office of Public and Indian Housing Real Estate Assessment Center (PIH-REAC), which is a division of HUD.

8.      Until recently, during her tenure at HUD, Plaintiff received high performance ratings and had no disciplinary actions or complaints about Plaintiff or her performance.  She was awarded a "Time Off" award in 2017.

9.      Beginning in approximately 2017, Plaintiff's supervisors, Patrick Evans and Kevin Portanova[1] and coworkers, began to marginalize her by, among other things,

- denying pay, including government furlough pay;
- forcing Plaintiff to take leave without pay ("LWOP");
- placing her on Absence Without Leave ("AWOL");
- assigning her to tasks for which they knew she was not trained and refusing to offer necessary training or mentorship;
- belittling and criticizing her based on her sex, age, race, national origin, and disability;
- denying her requests for sick leave;
- denying her use of the time off award; and
- taking away her telework.

10.      The supervisors treated similarly situated employees more favorably who

---

[1] Kevin Portanova served as Plaintiff's supervisor from October 1, 2016 until approximately April 1, 2018.  From May 1, 2018 until February 25, 2019, when Plaintiff was forced to resign from her position, Patrick Evans served as Plaintiff's supervisor.

did not share the same sex, age, race, or national origin as Plaintiff, who were younger than Plaintiff, and who did not have a physical disability.

11.     Supervisor Patrick Evans made it clear that he does not respect women.  He shared a story in which he refused to take orders from a female superior, instead asking another male superior to act as a go-between for him and the female boss.  Evans also stated that men are always better performers than women.  He added that colored women are the worst.

12.     Both supervisors Evans and Portanova and other colleagues continually mocked Plaintiff's accent and English/grammar.  They did not mock Plaintiff's non-Asian and/or non-Indian coworkers' grammar or manner of speaking/accent.

13.     Plaintiff's supervisors and another colleague, Eric Krapf, publicly posted things Plaintiff said (either aloud or in writing) on HUD's internal communications tool in order to make fun of Plaintiff's manner of speaking and perceived English language barrier/communication issues.

14.     Plaintiff complained to her supervisors about their discriminatory treatment and the discriminatory conduct and treatment of her coworkers.  Her supervisors had actual knowledge of this treatment.  However, they took little to no steps to address the situation or Plaintiff's complaints and requests for assistance.

15.     Plaintiff's supervisors forced her to continue working with her harassers. Upon information and belief, Plaintiff's work was either intentionally sabotaged or mistakenly/negligently compromised by one of her coworkers about whom she had complained numerous times.

16.     Plaintiff was punished in retaliation for complaining about the prohibited conduct and was warned not to involve her Union.

17.     Similarly situated coworkers who are not in Plaintiff's protected class performed more poorly than Plaintiff and had conduct issues that Plaintiff did not have; however, Plaintiff was the only such employee to be placed on a Performance Improvement Plan ("PIP") allegedly due to inexplicably being rated "Level 1" on all five (5) elements of her 2018 performance appraisal, despite prior high ratings.

18.     Plaintiff was placed on this "improvement" plan in retaliation for complaining about the above-referenced prohibited and discriminatory behavior.  Part of the "improvement" plan required Plaintiff to work with outdated, obsolete software that none of her colleagues were familiar with using.

19.     On more than one occasion, Plaintiff requested to work from home due to physical disabilities as supported by notes and prescriptions from her treating physicians. She was denied these requests.  Her ability to telework was canceled even though most of her work can easily be done remotely.

20.     Upon information and belief, Plaintiff's supervisors never denied her coworkers' similar requests to work from home.

21.     The discriminatory comments, constant belittling and criticism, mocking, and prohibited disparate treatment have created a hostile work environment resulting in anxiety, stress, insomnia, embarrassment, loss of self-esteem, depression, panic attacks, fear, and migraines.

22.    On February 25, 2019, Plaintiff was forced to resign from her position, resulting in a constructive discharge.

23.    On September 18, 2018, Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") against HUD, alleging discrimination based on her sex (female), race (Asian), national origin (India), disability, and age (over 40).

24.    HUD investigated the allegations, and the Investigator's Report was filed on May 7, 2019.  Plaintiff requested a hearing on her complaint before the EEOC.

25.    On September 18, 2020, HUD filed a Motion for Summary Judgment.  A response and reply were filed by Plaintiff and HUD, respectively.

26.    On January 28, 2021, Administrative Judge Wright, for the EEOC, issued a decision granting HUD's Motion for Summary Judgment without conducting a hearing.

27.    Administrative Judge Wright directed HUD to issue a final agency decision ("FAD") within forty (40) calendar days of receipt of the Administrative Judge's decision.  Forty calendar days following the decision, which was emailed to both the HUD representative and Plaintiff, was March 9, 2021.

28.    More than forty days following issuance of the Administrative Judge's decision, HUD issued its final order, or FAD, on March 23, 2021.

29.    Plaintiff has exhausted all administrative remedies prior to the filing of this lawsuit.

## COUNTS

## COUNT I – DISCRIMINATION BASED ON RACE, SEX, AND NATIONAL ORIGIN AS PROHIBITED BY TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED (DISPARATE TREATMENT), 42 U.S.C. § 2000e, et seq.

30.     Plaintiff adopts and realleges the allegations contained in Paragraphs 1 – 29 above as if fully set forth herein.

31.     Plaintiff is an Asian woman, born in India, over the age of 40 years.  She is a member of more than one protected class and was qualified for her position at the time she was forced to resign.

32.     Supervisors and coworkers at HUD (or under the control of HUD) regularly made discriminatory comments to Plaintiff regarding her race, national origin, and sex.

33.     Plaintiff's supervisors marginalized her while treating similarly situated employees more favorably.  Her supervisors denied pay, including furlough pay; forced Plaintiff to take LWOP; placed her on AWOL; assigned her to tasks for which she was not trained; refused to offer requested training or mentorship; belittled and criticized her based on her race, sex, and national origin; denied her requests for sick leave despite medical documentation; denied her use of the time off award; and took away her telework.

34.     Plaintiff complained about the discriminatory treatment to her supervisors and coworkers.  Her employer was aware of this prohibited treatment, yet no action was taken to investigate or address Plaintiff's complaints.  She requested to be moved to a different department, to a different team, or to a position under different supervisors.  Her complaints were ignored.

35.    Plaintiff suffered damages as a result of Defendants' unlawful discriminatory actions, including, without limitation, physical and emotional distress, reputational damage, past and future lost wages and benefits, and the cost of bringing this action.

36.    Defendants intentionally violated Plaintiff's rights with malice and/or reckless indifference.

WHEREFORE, Plaintiff respectfully requests that this Court accept jurisdiction over this matter and award Plaintiff compensatory damages, including but not limited to damages for her physical and emotional distress and reputational damage, punitive damages, past and future lost wages and benefits, plus interest, the costs of bringing this action, attorney's fees, and any other legal and equitable relief or damages to which she may be entitled.

## COUNT II – DISCRIMINATION BASED ON AGE AS PROHIBITED BY THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, AS AMENDED (ADEA), 29 U.S.C. § 621, et seq.

37.    Plaintiff adopts and realleges the allegations contained in Paragraphs 1 – 36 above as if fully set forth herein.

38.    Plaintiff is an employee of Defendant over the age of 40 years and is a member of the protected class.

39.    Plaintiff was qualified for her position at the time she was forced to resign.

40.    Plaintiff's supervisors routinely treated younger, similarly situated employees more favorably than Plaintiff.  For example, Plaintiff was denied pay, including furlough pay; forced to take LWOP; placed on AWOL; assigned to tasks for

which she was not trained; refused requested training or mentorship; instructed not to ask

for help; belittled and criticized based on her age; denied requests for sick leave despite

medical documentation; denied use of the time off award; and denied her telework.

41.     Plaintiff complained about this treatment to her supervisors and coworkers.

Her employer was aware of this discriminatory treatment but took no steps to address

Plaintiff's complaints.

42.     Plaintiff suffered damages as a result of Defendants' unlawful and willful

discriminatory actions and violations of the ADEA, including past and future lost wages

and benefits plus the costs of bringing this action.

WHEREFORE, Plaintiff respectfully requests that this Court accept jurisdiction

over this matter and award Plaintiff damages for her past and future wages and benefits,

plus interest, liquidated damages incurred in connection with this action, all costs and

reasonable attorney's fees incurred in this action, and any other legal and equitable relief

or damages to which Plaintiff may be entitled.

## COUNT III – DISCRIMINATION BASED ON PHYSICAL DISABILITY AS PROHIBITED BY THE REHABILITATION ACT OF 1973, AS AMENDED, 29 U.S.C. § 701 et seq.

43.     Plaintiff adopts and realleges the allegations contained in Paragraphs 1 – 42

above as if fully set forth herein.

44.     Plaintiff is disabled within the meaning of the Rehabilitation Act of 1973,

as amended.

45.     Plaintiff's disability was known to Defendants, Plaintiff's employer, and

her supervisors.

46.     Plaintiff was qualified and able to perform the essential functions of her position with or without an accommodation.

47.     Plaintiff requested a reasonable accommodation by, among other things, requesting to work from home or be granted telework.  Such reasonable accommodations were ignored and effectively denied without explanation.  Although aware of Plaintiff's disability, Plaintiff's employer took no steps to accommodate her so she could continue working in her position.

48.     Plaintiff provided FMLA documentation and medical notes from her doctors, Dr. Sou Thau and Dr. Samuel Sanders, on multiple occasions, excusing her from work for specified days or time periods or, as a reasonable accommodation, prescribing telework.  The FMLA documentation and medical notes are attached hereto as Exhibit A.

49.     Similarly situated employees were allowed or granted permission to telework.

50.     Plaintiff suffered adverse employment action by, among other things, being assigned impossible tasks, being denied training, and being placed on a PIP, based on her known disability.

51.     Defendants intentionally violated Plaintiff's rights with malice and/or reckless indifference.

WHEREFORE, Plaintiff respectfully requests that this Court accept jurisdiction over this matter and award Plaintiff compensatory damages, including but not limited to damages for her physical and emotional distress and reputational damage, punitive damages, past and future lost wages and benefits, plus interest, the costs of bringing this

action, attorney's fees, and any other legal and equitable relief or damages to which she may be entitled.

## COUNT IV – HOSTILE WORK ENVIRONMENT

52.      Plaintiff adopts and realleges all allegations contained in Paragraphs 1 – 51 above as if fully set forth herein.

53.      Plaintiff, as a disabled Asian woman, born in India and over the age of 40 years old, is a member of more than one protected class.

54.      Plaintiff was subjected to repeated unwelcome conduct, threats, belittling, and humiliation, based on her membership in certain protected class(es), from her coworkers and supervisors.

55.      The harassment described herein was intended to interfere with Plaintiff's work performance and did so interfere.  She was intimidated, frightened, and anxious given her supervisors' and coworkers' threats, offensive and discriminatory language, and offensive and discriminatory comments.

56.      Plaintiff was yelled at, cursed at, intimidated, given impossible tasks, refused help or training for tasks, threatened to not get the Union involved in her complaints, and denied multiple benefits (such as telework and time off) other employees enjoyed due to her being a member of a protected class.

57.      Plaintiff's employer was aware or should have been aware of the hostile working environment and harassment because Plaintiff complained about it on numerous occasions to her direct supervisors and others.

58.     Plaintiff's employer failed to take any corrective action, instead penalizing Plaintiff for her complaints.

59.     The harassment became so pervasive and severe to force Plaintiff to resign in February of 2019.

60.     Plaintiff suffered damages as a result of her employer's creating and allowing a hostile work environment, including, without limitation, emotional distress, reputational damage, past and future lost wages and benefits, and the cost of bringing this action.

61.     Defendants intentionally violated Plaintiff's rights with malice and/or reckless indifference.

WHEREFORE, Plaintiff respectfully requests that this Court accept jurisdiction over this matter and award Plaintiff compensatory damages, including but not limited to damages for her emotional distress, physical pain and suffering, and reputational damage, punitive damages, past and future lost wages and benefits, plus interest, the costs of bringing this action, attorney's fees, and any other damages to which she may be entitled.

## COUNT V – RETALIATION BASED ON PROTECTED ACTION

62.     Plaintiff adopts and realleges the allegations contained in Paragraphs 1 – 61 above as if fully set forth herein.

63.     Plaintiff engaged in statutorily protected activity by complaining to her supervisors and others of discriminatory treatment based on Plaintiff's race, sex, national origin, age, and disability.

64.     In response to Plaintiff's complaints, her supervisors immediately punished her by discouraging other coworkers from working with her, denying pay, including furlough pay; giving her negative ratings on an appraisal; assigning her to tasks for which she was not trained; refusing to offer requested training or mentorship; belittling and criticizing her based on her race, sex, national origin, age, and/or disability; denying her requests for sick leave despite her providing medical documentation; denying her use of the time off award; taking away her telework; forcing Plaintiff to take LWOP; and placing her on AWOL.

65.     In response to her complaints, Plaintiff was told that she was being "petty."

66.     As a direct culmination of Plaintiff's complaints and subsequent series of adverse employment actions taken against her, she was forced to resign in February of 2019.

67.     The retaliatory conduct continued after Plaintiff's forced resignation.  In her new position, she was hired at the GS-14, Step 3 level; however, after only four (4) days on the new job, she was demoted to GS-14, Step 2 because HUD submitted erroneous information indicating Plaintiff was GS-14, Step 2.

68.     Plaintiff has suffered damages due to her employer's unlawful retaliation, including but not limited to, emotional distress, past and future lost wages and benefits, and the cost of bringing this action.

69.     Defendants intentionally violated Plaintiff's rights with malice and/or reckless indifference.

WHEREFORE, Plaintiff respectfully requests that this Court accept jurisdiction over this matter and award Plaintiff compensatory damages, including but not limited to damages for her emotional distress, physical pain and suffering, and reputational damage, punitive damages, past and future lost wages and benefits, plus interest, the costs of bringing this action, attorney's fees, and any other damages to which she may be entitled.

## COUNT VI – CONSTRUCTIVE DISCHARGE

70.    Plaintiff adopts and realleges the allegations contained in Paragraphs 1 – 69 above as if fully set forth herein.

71.    Plaintiff, as a disabled Asian woman, born in India and over the age of 40 years old, is a member of more than one protected class.

72.    Plaintiff was subject to continuing, severe harassment, retaliation, and discrimination based upon her protected class(es) for over a year while working for HUD or an agency that is controlled by and/or a division of HUD.

73.    She was publicly humiliated based on her accent and alleged English barrier to communication and proper grammar.  She was belittled and intimidated as a woman by her male coworkers and superiors who yelled at her, shook their fists at her, and stood over her in a physically threatening manner.

74.    Plaintiff was stalked on the job by the same employee who accessed her computer without authorization.  This coworker showed up in Plaintiff's workspace multiple times per day unannounced, followed Plaintiff around the office, and intimidated Plaintiff.  Plaintiff complained about the stalking, but instead of separating Plaintiff and the other employee, Plaintiff's supervisors placed them on the same project and refused

to move either to a different team or project.  Plaintiff sent multiple emails to supervisor Portanova requesting that she be moved from the team that included her stalker.  Further, supervisor Evans laughed at Plaintiff's concerns and stated that he never had a problem with the coworker in question.

75.    Plaintiff complained on multiple occasions about the discrimination and harassment she experienced; yet rather than conduct an investigation or give any level of credence to Plaintiff's complaints, her employer and supervisors punished her.

76.    The conduct of which Plaintiff complained was designed to encourage her to resign and would have compelled a reasonable employee in Plaintiff's position to resign.

77.    Plaintiff was constructively discharged by being forced to resign in February of 2019.

78.    Plaintiff has suffered damages including, without limitation, emotional distress, past and future lost wages and benefits, and the cost of bringing this action.

79.    Defendants intentionally violated Plaintiff's rights with malice and/or reckless indifference.

WHEREFORE, Plaintiff respectfully requests that this Court accept jurisdiction over this matter and award Plaintiff compensatory damages, including but not limited to damages for her emotional distress, physical pain and suffering, and reputational damage, punitive damages, past and future lost wages and benefits, plus interest, the costs of bringing this action, attorney's fees, and any other damages to which she may be entitled.

### COUNT VII – DISCRIMINATION BASED ON RACE, SEX, NATIONAL ORIGIN, AND DISABILITY AS PROHIBITED BY THE CIVIL RIGHTS ACT OF 1991, AS AMENDED (42 U.S.C. § 1981, 42 U.S.C. § 1981A, et seq.)

80.     Plaintiff adopts and realleges all allegations contained in Paragraphs 1 – 79 above as if fully set forth herein.

81.     Plaintiff is an Asian woman, born in India, who is disabled and over the age of 40 years old.

82.     Plaintiff was at all times qualified for her position and could perform the necessary job functions of her position with or without the provision of a reasonable accommodation.

83.     Plaintiff's supervisors and coworkers at HUD (or under the control of HUD) regularly made discriminatory comments to Plaintiff regarding her race, sex, national origin, and disability.

84.     Plaintiff's supervisors marginalized her while treating similarly situated employees more favorably.  Her supervisors denied pay, including furlough pay; assigned her to tasks for which she was not trained; refused to offer training or mentorship; belittled and criticized Plaintiff based on her race, sex, national origin, and disability; denied her requests for sick leave despite medical documentation citing the need therefor; denied her use of her time off award; took away her telework; forced Plaintiff to take LWOP; and placed Plaintiff on AWOL.

85.     Plaintiff complained about the disparate treatment.  Plaintiff's supervisors and employer were aware of the prohibited, discriminatory treatment.  Nonetheless, her

supervisors and employer took no action to address Plaintiff's complaints.  Her complaints were ignored or laughed away.

86.    Plaintiff suffered damages as a result of Defendants' unlawful discriminatory actions, including, without limitation, physical and emotional distress, reputational damage, past and future lost wages and benefits, and the cost of bringing this action.

WHEREFORE, Plaintiff respectfully requests that this Court accept jurisdiction over this matter and award Plaintiff compensatory damages, including but not limited to damages for her physical and emotional distress and reputational damage, punitive damages, past and future lost wages and benefits, plus interest; the costs of bringing this action; attorney's fees; and any other equitable and legal remedies and damages to which she may be entitled.

Respectfully submitted this **27th** day of April 2021.


**/s/Mohaimina Haque**

Mohaimina Haque, DC Bar No. 1644522
Law Office of Mohaimina Haque, PLLC
1629 K Street, NW
Suite 300
Washington, D.C. 20006
Phone: (202) 355-6384
Attorney for Plaintiff


Copies to be served via Certified Mail, Return Receipt Requested on the following Defendants:

Marcia Fudge
Secretary of the U.S. Department of Housing and Urban Development (HUD)

451 7th St., S.W.
Washington, D.C. 20410

U.S. Department of Housing and Urban Development (HUD)
451 7th St., S.W.
Washington, D.C. 20410

      Copies to be served on the following non-parties to this action:

Hon. Merrick B. Garland
U.S. Attorney General
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0001

Hon. Channing D. Phillips
U.S. Attorney for the District of Columbia
U.S. Attorney's Office
555 4th St., N.W.
Washington, DC 20001

# EXHIBIT A

# Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)

**U.S. Department of Labor**

Wage and Hour Division



| DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT | OMB Control Number: 1235-0003 Expires: 8/31/2021 |
|---|---|

## SECTION I: For Completion by the EMPLOYER

**INSTRUCTIONS to the EMPLOYER:** The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. Please complete Section I before giving this form to your employee. Your response is voluntary. While you are not required to use this form, you may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308. Employers must generally maintain records and documents relating to medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

Employer name and contact:  U.S. Department of Housing and Urban Development

Employee's job title:  IT Specialist (APPSW REAC)       Regular work schedule:  Conventional - 10 8-hour days/pay period

Employee's essential job functions:  The design, documentation, development, modification, testing, installation, implementation, and support of new or existing

applications software in compliance with OCIO application development standards and OCIO defined Cybersecurity policy and guidelines that comply with all FISMA requirements.

Check if job description is attached:   ✓

## SECTION II: For Completion by the EMPLOYEE

**INSTRUCTIONS to the EMPLOYEE:** Please complete Section II before giving this form to your medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition. If requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request. 29 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b).

| Your name: Parminder | | Bajaj |
|---|---|---|
| First | Middle | Last |

## SECTION III: For Completion by the HEALTH CARE PROVIDER

**INSTRUCTIONS to the HEALTH CARE PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b). Please be sure to sign the form on the last page.

Provider's name and business address:  *Sou Thao, MD, Veterans Affairs Medical Center*

Type of practice / Medical specialty:  *Internal Medicine*

Telephone: (202 ) 745-8000        Fax:(202 )518-4702

Form WH-380-E  Revised May 2015

PART A: MEDICAL FACTS

1. Approximate date condition commenced: _____ *18 years ago* _____

    Probable duration of condition: _____ *Chronic, worsening pain* _____

    **Mark below as applicable:**

    Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?
    X No ___ Yes. If so, dates of admission:

    _____

    Date(s) you treated the patient for condition:

    *9/11/17, 10/18/17, 01/24/18, 8/02/18, 09/05/18*

    Will the patient need to have treatment visits at least twice per year due to the condition? ___ No X Yes.

    Was medication, other than over-the-counter medication, prescribed? ___ No X Yes.

    Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?
    ___ No X Yes. If so, state the nature of such treatments and expected duration of treatment:

    *Pain specialist, orthopedics, physical therapy, accupuncture*

2. Is the medical condition pregnancy? X No ___ Yes. If so, expected delivery date: _____

3. Use the information provided by the employer in Section I to answer this question. If the employer fails to provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions.

    Is the employee unable to perform any of his/her job functions due to the condition: ___ No X Yes.

    If so, identify the job functions the employee is unable to perform:

    *job duties that don't involve left upper extremity use.*

4. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):

    *Sustained injury to left radius and ulnar resulting in complete closed fracture of both bones. She underwent open reduction and internal fixation. She sustained injury while she was in active duty. She has had worsening chronic severe pain in her left arm since then. Other associated symptoms include numbness and tingling. She is hypersensity to touch and any movement of her arm. Also, she has mild spinal stenosis of her cervical spine that is adding to her left arm pain.*

CONTINUED ON NEXT PAGE          Form WH-380-E Revised May 2015

PART B: AMOUNT OF LEAVE NEEDED

5. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery? ___No _X_Yes.

If so, estimate the beginning and ending dates for the period of incapacity: *unclear, ongoing*

6. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition? ___No _X_ Yes.

If so, are the treatments or the reduced number of hours of work medically necessary? ___No _X_Yes.

Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:

*will need at least monthly visits for pain management.*

Estimate the part-time or reduced work schedule the employee needs, if any:

_____ hour(s) per day; _____ days per week from _____ through _____

7. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions? ___No _X_Yes.

Is it medically necessary for the employee to be absent from work during the flare-ups? ____ No _X_Yes. If so, explain:

*Episodic flare-ups will cause severe pain, which will limit patient's ability to work and use of her left arm.*

Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

Frequency        : _/_ times per _/_ week(s) _____ month(s)

Duration: _____ hours or ___ day(s) per episode

ADDITIONAL INFORMATION: IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER.

*Patient has had ongoing and worsening, severe pain in her left upper extremity starting over 15 years ago after sustaining injury to her arms while active duty in the military. Any use of her left arm/hands has caused her severe pain.*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____        _____
**Signature of Health Care Provider**        **Date**   9/26/18

### PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT

If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210. **DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT.**

Form WH-380-E  Revised  May 2015

DOCTOR'S NOTES FOR REASONABLE ACCOMODATION



**DEPARTMENT OF VETERANS AFFAIRS**
**MEDICAL CENTER**
**50 Irving Street NW**
**Washington DC 20422**

August 2, 2018

Washington DC VAMC
Orange Team Primary Care
Orange Team Front Desk/Appointments 202-745-8445
Medical Advice 202-745-8247

To Whom It May Concern:

Ms. Parminder Bajaj was seen in the clinic today. Due to her severe worsening left ar
please excuse her from work from 8/1/18 to 8/10/18.

If you have any questions, please don't hesitate to contact me.

Sincerely,

Sou Thao, MD
Internal Medicine
Orange Clinic Primary Care

1

# DOCTOR'S NOTES FOR REASONABLE ACCOMODATION

GREATER
WASHINGTON
ORTHOPAEDIC
GROUP PA

Frank Seinsheimer, III, MD, F.A.C.S.
Irvin A. Guterman, MD, F.A.A.O.S.
David M. Perim, MD, F.A.A.O.S.
Derek A. Kram, MD, F.A.A.O.S.
David M. Smink, MD, F.A.A.O.S.
Samuel M. Sanders, MD, F.A.A.O.S.
Gabriel Petruccelli, MD, F.A.A.O.S.
Korboi N. Evans, MD, MS, F.A.A.O.S.

1400 Forest Glen Road, # 400
Silver Spring, Maryland 20910
(301) 589-3324

9420 Key West Avenue, # 400
Rockville, Maryland 20850
(301) 762-4800

19532 Doctors Drive
Germantown, Maryland 20874
(301) 515-2607

8-28-18
Date

**Parminder Bajaj**
Patient's Name

✓ Patient was seen in our office today 8/28
✗ Unable to work/attend school from 8/28 to 9/12/18
___ May return to regular duty_____
___ Patient cannot work in usual capacity.
___ May return to light duty work _____
___ Sedentary work only.
___ If light duty unavailable then patient cannot work.
___ Should be on light duty work until further notice.
___ Medically excused from P.E. class/Physical Activities_____ to _____
___ Return appointment scheduled for _____
___ Medically excused from fitness club membership.
___ Other_____
_____
_____
_____

Restrictions are as follows:
___ Lifting up to _____ lbs.          ___ No prolonged walking/standing
___ No prolonged sitting                 ___ No stair/ladder climbing
___ No bending/twisting                  ___ No pushing/pulling
___ Work _____ hours per day           ___ Unable to use _____

Diagnosis: **Cervical Radic**
**Samuel Sanders**

## DOCTOR'S NOTES FOR REASONABLE ACCOMODATION



## DOCTOR'S NOTES FOR REASONABLE ACCOMODATION

Pay period 19: Sept 16, 2018 to Sept 29,1018
Pay period 20: Sept 30, 2018 to Oct 13,1018
 (Look at the above screenshot) I sent this Doctors note.

ORTHOPAEDIC
GROUP PA

Frank Seinsheimer, III, MD, F.A.C.S.
Irvin A. Guterman, MD, F.A.A.O.S.
David M. Perim, MD, F.A.A.O.S.
Derek A. Kram, MD, F.A.A.O.S.
David M. Smink, MD, F.A.A.O.S.
Samuel M. Sanders, MD, F.A.A.O.S.
Gabriel Petruccelli, MD, F.A.A.O.S.
Korboi N. Evans, MD, MS, F.A.A.O.S.

1400 Forest Glen Road, # 400
Silver Spring, Maryland 20910
(301) 589-3324

9420 Key West Avenue, # 400
Rockville, Maryland 20850
(301) 762-4800

19532 Doctors Drive
Germantown, Maryland 20874
(301) 515-2607

10-2-18
Date

Parminder Bajaj
Patient's Name

X   Patient was seen in our office today.
___ Unable to work/attend school from _____ to _____
___ May return to regular duty.
___ Patient cannot work in usual capacity.
___ May return to light duty work _____
___ Sedentary work only.
___ If light duty unavailable then patient cannot work.
___ Should be on light duty work until further notice.
___ Medically excused from P.E. class/Physical Activities _____ to _____
___ Return appointment scheduled for _____
___ Medically excused from fitness club membership.
X   Other   Continue   to   telework
       for another month until
       11-13-18

Restrictions are as follows:
___ Lifting up to _____ lbs.
___ No prolonged sitting
___ No bending/twisting
___ Work _____ hours per day
___ No prolonged walking/standing
___ No stair/ladder climbing
___ No pushing/pulling
___ Unable to use _____

Diagnosis: Left arm weakness

Doctor's Signature   Samuel Sanders, MD

5

## DOCTOR'S NOTES FOR REASONABLE ACCOMODATION

pay period 21: Oct 14, 2018 to Oct 17, 1018

pay period 22: Oct 28, 2018 to Nov 10, 1018



**DEPARTMENT OF VETERANS AFFAIRS**
**MEDICAL CENTER**
**50 Irving Street NW**
**Washington DC 20422**

November 15, 2018

Washington DC VAMC
Orange Team Primary Care
Orange Team Front Desk/Appointments 202-745-8445
Medical Advice 202-745-8247

To Whom It May Concern:

Ms. Bajaj, Parminder is under the medical care of the Veterans Affairs Medical Center in Washington, DC.

Ms. Bajaj has chronic pain that worsens intermittently. She has severe pain in her left upper extremity from a sustained injury to her left forearm while on active military duty. In addition, she has cervical stenosis and degenerative changes in her cervical spine that contributes to her pain. Due to severe pain and hypersensitivity to pain, she is significantly limited in the use of her left upper extremity. Lifting, grasping, and repetitive motion such typing, cause pain. Please provide her with reasonable accommodations and allow her to telework from home starting 11/14/18 for a period of 30 days.

If you have any questions, please feel free to contact me.

Sincerely,

Sou Thao, MD
Internal Medicine
Orange Clinic Primary Care

pay period 23: Nov 11, 2018 to Nov 24,1018

## DOCTOR'S NOTES FOR REASONABLE ACCOMODATION

pay period 25: Dec 09, 2018 to Dec 22, 2018

Then Shut Down started.
December 22, 2018 until January 25, 2019 (35 days).

pay period 26: Dec 23, 2018 to Jan 5, 2019

pay period 01: Jan 6th, 2018 to Jan 19th, 2019
pay period 02: Jan 20, 2019 to Feb 02, 2019

January 26 and January 27 were Saturday and Sunday and on Monday Jan 28th, 2019

I sent an email to Mr. Portanova for advanced sick leave as they were refusing my reasonable accommodation which he refused.

