## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PARMINDER BAJAJ,<br><br>       *Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOUSING AND<br>URBAN DEVELOPMENT, *et al.*,<br><br>       *Defendants*. | Civil Action No. 21-1149 (RDM) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Parminder Bajaj brings this civil action for discrimination, retaliation, hostile work environment, and constructive discharge under (among others) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*, against her former employer, the United States Department of Housing and Urban Development ("HUD"), and Marcia Fudge, the Secretary of HUD. Dkt. 1. Now before the Court is Defendants' partial motion to dismiss. Dkt. 8. For the reasons that follow, the Court will **GRANT** in part and **DENY** in part Defendants' motion.

### I. BACKGROUND

For purposes of evaluating Defendants' motion, the following allegations, which are taken from Bajaj's complaint, are accepted as true. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

## A.    Factual Background

Plaintiff Parminder Bajaj worked as an IT Specialist at HUD's Office of Public and
Indian Housing Real Estate Assessment Center from October 1, 2016 to February 25, 2019.
Dkt. 1 at 3, 6 (Compl. ¶¶ 7, 22).  According to the complaint, Bajaj is a member of multiple
protected classes—she is "an Indian woman, over the age of 40 years old," *id.* at 2 (Compl. ¶ 2),
and "disabled within the meaning of the Rehabilitation Act of 1973, as amended," *id.* at 9
(Compl. ¶ 44); *see also id.* at 21–22 (Compl. Ex. A at 2–3) (describing "chronic, severe pain" in
Bajaj's left arm, along with "mild spinal stenosis of her cervical spine" that "add[s] to her left
arm pain").  For much of her time with HUD, Bajaj "received high performance ratings" and did
not face any "disciplinary actions or complaints" about her work.  *Id.* at 3 (Compl. ¶ 8).  She
received a "Time Off" award in 2017.  *Id.*

"Beginning in approximately 2017," however, Bajaj's supervisors, Patrick Evans and
Kevin Portanova, allegedly "marginaliz[ed] her" by treating similarly situated employees—"who
did not share the same sex, age, race, or national origin as Plaintiff, who were younger than
Plaintiff, and who did not have a physical disability"—more favorably.  *Id.* at 3–4 (Compl. ¶¶ 9–
10).  According to the complaint, Evans and Portanova did this by, "among other things, . . .
denying pay, including government furlough pay; forcing Plaintiff to take leave without pay
('LWOP'); placing her on Absence Without Leave ('AWOL'); assigning her to tasks for which
they knew she was not trained and refusing to offer necessary training or mentorship; belittling
and criticizing her based on her sex, age, race, national origin, and disability; denying her
requests for sick leave; denying her use of the time off award; and taking away her telework."
*Id.* at 3 (Compl. ¶ 9).  Bajaj's supervisors and colleagues allegedly "mocked" her accent and
English "continually," including by publicly posting "things [Bajaj] said . . . on HUD's internal

communications tool in order to make fun of" her English.  *Id.* at 4 (Compl. ¶¶ 12–13).  One of

Bajaj's supervisors purportedly "stat[ed] that men are always better performers than women,"

adding that "colored women are the worst."  *Id.* (Compl. ¶ 11).

When informed of this "discriminatory conduct," Bajaj's supervisors allegedly "took

little to no steps to address the situation or [Bajaj's] complaints and requests for assistance."  *Id.*

(Compl. ¶ 14).  Bajaj asked to be "moved to a different department, to a different team, or to a

position under different supervisors," but her "complaints were ignored."  *Id*. at 7 (Compl. ¶ 34).

Instead, her supervisors allegedly "forced her to continue working with her harassers," *id.* at 4

(Compl. ¶ 15), and told her that "she was being 'petty,'" *id.* at 13 (Compl. ¶ 65).  On August 30,

2018, her "work was either intentionally sabotaged or mistakenly/negligently compromised by

one of her coworkers" who she had complained about in the past.  *Id*. at 4 (Compl. ¶ 15); Dkt. 8-

2 at 18 (Drew Decl. Ex. 2 at 5).

After complaining about the above-described "discriminatory conduct," Dkt. 1 at 4

(Compl. ¶ 14), Bajaj was allegedly "punished in retaliation" and "warned not to involve her

[u]nion," *id.* at 5 (Compl. ¶ 16).  As further "retaliation," on May 31, 2018, Bajaj was placed on

a Performance Improvement Plan ("PIP") after she "inexplicably" received the lowest possible

rating "on all five (5) elements of her [May 21,] 2018, performance appraisal."  *Id.* (Compl.

¶¶ 17–18); Dkt. 8-2 at 6 (Drew Decl. Ex. 1 at 6).[1]  The PIP required Plaintiff to "work with

---

[1] Although the complaint is unclear about the date of this performance appraisal, Defendants
attached the appraisal itself to their partial motion to dismiss.  *See* Dkt. 8-2 at 45 (Drew Decl. Ex.
3).  That document makes clear, and Bajaj does not contest, *see* Dkt. 9-1 at 3, that Bajaj and her
supervisor finalized the appraisal on May 21, 2018.  The Court notes that, contrary to Bajaj's
allegations, Dkt. 1 at 5 (Compl. ¶¶ 17–18), it appears from the appraisal that Bajaj received the
lowest possible rating for only one of the five elements, "Collaboration," *see* Dkt 8-2 at 28
(Drew Decl. Ex. 3).  For the remaining four elements, Bajaj received a "Fully Successful" rating.
*Id.* at 31–43 (Drew Decl. Ex. 3).

outdated, obsolete software that none of her colleagues were familiar with using." Dkt. 1 at 5 (Compl. ¶ 18).

In early August 2018, Bajaj sought to be "excus[ed] . . . from work" or to be permitted to telework as a "reasonable accommodation" for her disability, and she "provided [Family and Medical Leave Act] documentation . . . from her doctors" to that effect. *Id.* at 10 (Compl. ¶ 48); *see also id.* at 24–29 (Compl. Ex. A). Her request was allegedly rejected by her supervisor on September 11, 2018, even though "[s]imilarly situated employees were allowed or granted permission to telework." Dkt. 1 at 10 (Compl. ¶ 49); Dkt. 8-2 at 14 (Drew Decl. Ex. 2 at 1).[2] "On more than one occasion," Plaintiff unsuccessfully requested to work from home "due to physical disabilities," and her "ability to telework was canceled even though most of her work can easily be done remotely." Dkt 1at 5 (Compl. ¶ 19).

According to Bajaj, the combination of these "discriminatory comments, constant belittling and criticism, mocking, and prohibited disparate treatment" created a "hostile work environment" that caused her "anxiety, stress, insomnia, embarrassment, loss of self-esteem,

---

[2] Defendants attached to their partial motion to dismiss three sets of documents: (1) the EEO counselor's report from September 7, 2018, regarding Bajaj's informal complaint on August 8, 2018, Dkt 8-2 (Drew Decl. Ex. 1); (2) copies of Bajaj's formal EEO complaints from September 18, 2018; Dkt. 8-2 (Drew Decl. Ex. 2); and (3) Bajaj's May 18, 2018 mid-year performance appraisal, Dkt. 8-2 (Drew Decl. Ex. 3). Although under Rule 12(b)(6) the Court's review is generally limited to "the facts contained within the four corners of the complaint," *Nat'l Postal Pro. Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 28 (D.D.C. 2006), the Court may also take into account "any documents attached to or incorporated into the complaint," *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011). Such documents may include "EEOC charges and their accompanying documents" where (as here) the complaint references those documents. *Scott v. Dist. Hosp. Partners, L.P.*, 60 F. Supp. 3d 156, 161 (D.D.C. 2014). Because Bajaj's complaint discusses both her administrative filings before HUD's EEO Office, Dkt. 1 at 6 (Compl. ¶ 23), and her May 18, 2018 performance review, *id.* at 5 (Compl. ¶ 17), and because Bajaj does not object to Defendants' reliance on these administrative materials, *see* Dkt. 9-1, the Court will consider the documents Defendants attached to their partial motion to dismiss.

depression, panic attacks, fear, and migraines." *Id.* (Compl. ¶ 21).  In addition to being "publicly humiliated based on her accent," Bajaj alleges she was "belittled and intimidated as a woman by her male coworkers and superiors who yelled at her, shook their fists at her, and stood over her in a physically threatening manner." *Id.* at 14 (Compl. ¶ 73).  At one point, according to Bajaj, she "was stalked on the job" by a coworker, who also "accessed her computer without authorization[,] . . . showed up in [her] workspace multiple times per day unannounced, [and] followed [her] around the office," leaving her feeling "intimidated." *Id.* (Compl. ¶ 74).  Bajaj "complained about the stalking" to her supervisors, but "instead of separating [her] and the other employer," her supervisors allegedly "placed them on the same project and refused to move either to a different team or project." *Id.* at 14–15 (Compl. ¶ 74).  Bajaj further alleges that her supervisor "laughed at [her] concerns," adding that "he [had] never had a problem with the coworker in question." *Id.*

According to her complaint, Bajaj "was forced" to resign on February 25, 2019, "resulting in a constructive discharge." *Id.* at 6 (Compl. ¶ 22).

**B.    Procedural Background**

On August 8, 2018, Bajaj first contacted an Equal Employment Opportunity ("EEO") counselor in HUD's Office of Departmental Equal Employment Opportunity ("HUD's EEO Office").  *See* Dkt. 8-2 at 4 (Drew Decl. Ex. 1).  The EEO counselor issued a report on September 7, 2018, *id.*; *see also* 29 C.F.R. § 1614.105, and on September 18, 2018, Bajaj filed two formal complaints with HUD's EEO Office, one "alleging discrimination based on her sex (female), race (Asian), national origin (India), disability, and age (over 40)," Dkt. 1 at 6 (Compl. ¶ 23), and the other alleging retaliation, Dkt. 8-2 at 17–20 (Drew Decl. Ex. 2 at 4–7).  HUD's EEO Office investigated Bajaj's allegations and filed an investigator's report on May 7, 2019.

5

Dkt. 1 at 6 (Compl. ¶ 24).  On September 18, 2020, HUD moved for summary judgment, and

HUD's EEO Office granted that motion on January 28, 2021.  *Id.* (Compl. ¶¶ 25–27).  The final

agency decision issued on March 23, 2021.  *Id.* (Compl. ¶ 28).

On April 27, 2021, Bajaj filed suit in this Court.  Dkt. 1.  Her seven-count complaint

asserts claims for discrimination based on race, sex, and national origin under Title VII (Count

I); discrimination based on age under the ADEA (Count II); discrimination based on disability

under the Rehabilitation Act (Count III); hostile work environment (Count IV); retaliation

(Count V); constructive discharge (Count VI); and discrimination based on race, sex, national

origin, and disability under the Civil Rights Act of 1991, 42 U.S.C. §§ 1981 and 1981a (Count

VII).  *Id.* at 7–17 (Compl. ¶¶ 30–86).  Plaintiff seeks both injunctive and monetary relief,

including compensatory damages and punitive damages.  *Id.* at 8, 9, 10–11, 12, 14, 15, 17

(Compl. ¶¶ 36, 42, 51, 61, 69, 79, 86).

On July 23, 2021, Defendants filed a partial motion to dismiss.  Dkt. 8.  In response,

Plaintiffs conceded that her claims under 42 U.S.C. §§ 1981 and 1981a should be dismissed, as

should her claims against HUD itself (rather than against the Secretary) and her claims for

punitive damages.  Dkt. 9-1 at 11–12.  Given these concessions, only one argument remains:

Defendants' contention that Counts I, II, and V should be dismissed to the extent those claims

"are based on actions that occurred more than 45 [days] before . . . her first contact with an EEO

Counselor," because any such claims are time-barred.  Dkt. 8-1 at 6–7; *see also* Dkt. 11 at 1.

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *see* Fed.

R. Civ. P. 12(b)(6).  In evaluating such a motion, the Court "must first 'tak[e] note of the

elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the

plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that

is plausible on its face.'"  *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)) (alterations in original).  The

complaint need not include "detailed factual allegations," and a plaintiff may survive a Rule

12(b)(6) motion even if "recovery is very remote and unlikely," so long as the facts alleged in the

complaint are "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555–56 (2007).  The Court may consider only "the facts contained

within the four corners of the complaint," *Nat'l Postal Pro. Nurses v. U.S. Postal Serv.*, 461 F.

Supp. 2d 24, 28 (D.D.C. 2006), along with "any documents attached to or incorporated into the

complaint, matters of which the court may take judicial notice, and matters of public record,"

*United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011).

This standard governs Defendants' argument that Bajaj has failed to exhaust her

administrative remedies for certain claims.  *See* Dkt. 8-1 at 10–12.  Because exhaustion, "'though

mandatory, is not jurisdictional,' motions to dismiss for failure to exhaust administrative

remedies are more appropriately analyzed under Rule 12(b)(6)."  *Noisette v. Geithner*, 693 F.

Supp. 2d 60, 65 (D.D.C. 2010) (quoting *Douglas v. Donovan*, 559 F.3d 549, 556 n.4 (D.C. Cir.

2009)).  Although "plaintiffs are not required to plead or [to] demonstrate exhaustion in their

complaints, . . . a defendant may raise exhaustion as an affirmative defense in a motion to

dismiss 'when'"—as here—"'the facts that give rise to the defense are clear from the face of the

complaint,'" *Kennedy v. Berkel & Co. Contractors, Inc.*, 319 F. Supp. 3d 236, 245 n.1 (D.D.C.

2018) (quoting *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998)), or

from undisputed materials that are referenced in or incorporated into the complaint.

## III.  ANALYSIS

The dispute before the Court is a narrow one.  As noted above, Bajaj has conceded that her claims under 42 U.S.C. §§ 1981 and 1981a, her claims against HUD itself, and her claims for punitive damages should all be dismissed.  Dkt. 9-1 at 11–12.  Accordingly, as Defendants point out in their reply brief, "[t]he only remaining issue is whether the Court should dismiss Counts I, II, and V to the extent they are based on agency actions that took place more than 45 days before Plaintiff first contacted an EEO counsel."  Dkt. 11 at 1.

Counts I and II allege disparate treatment based on race, sex, and national origin under Title VII and based on age under the ADEA, while Count V alleges unlawful retaliation.  *See* Dkt. 1 at 7, 8, 12 (Compl. ¶¶ 30–42, 62–69).  The complaint does not specify the statute (or statutes) under which Bajaj brings Count V, but Bajaj alleges that the protected activity underlying that Count included complaints regarding discrimination prohibited by Title VII, the ADEA, and the Rehabilitation Act.  *See id.* at 12 (Compl. ¶ 63) ("Plaintiff engaged in statutorily protected activity by complaining to her supervisors and others of discriminatory treatment based on Plaintiff's race, sex, national origin, age, and disability.").

Before bringing suit under any of these statutes—for discrimination or for retaliation—a plaintiff must exhaust her administrative remedies.  *See Coleman v. Duke*, 867 F.3d 204, 206 (D.C. Cir. 2017) (administrative exhaustion required under Title VII and the ADEA); *Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015) (same for Rehabilitation Act).  "Regulations prescribe in detail the administrative procedures available" to federal employees, and federal law "hinges court review on prior resort to the agency whose employment practice is challenged." *Kizas v. Webster*, 707 F.2d 524, 544 (D.C. Cir. 1983) (footnote omitted) (discussing Title VII).

The same administrative process governs claims brought under Title VII, *see id.*, the ADEA, *see Coleman*, 867 F.3d at 206, and the Rehabilitation Act, *see Doak*, 798 F.3d at 1099.

Only the first step of that process is at issue here. Under the governing regulation, employees of a federal agency "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information . . . must initiate contact" with the agency's EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1); *see also Green v. Brennan*, 578 U.S. 547, 549 (2016). This means that, as a general matter, the regulatory scheme "bar[s] discrimination claims that an employee does not first bring to the attention of an agency's EEO counselor within forty-five days of the alleged conduct." *Vickers v. Powell*, 493 F.3d 186, 198 (D.C. Cir. 2007). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). But this prohibition does not preclude plaintiffs from "us[ing] [such] 'prior acts as background evidence in support of a timely claim.'" *Law v. Cont'l Airlines Corp.*, 399 F.3d 330, 334 (D.C. Cir. 2005) (quoting *Morgan*, 536 U.S. at 113).

Here, it is undisputed that Bajaj first contacted HUD's EEO counselor on August 8, 2018, and that "the 45-day limitations period," therefore, "includes acts occurring on or after June 24, 2018," Dkt. 9-1 at 5; *see also* Dkt. 8-2 at 4 (Drew Decl. Ex. 1 at 4). Accepting Bajaj's allegations as true for present purposes, it is clear that at least *some* of the acts giving rise to Bajaj's claims in Counts I, II, and V occurred within the relevant 45-day window. Bajaj alleges that the discriminatory conduct "[began] in approximately 2017," Dkt. 1 at 3 (Compl. ¶ 9), and

she further alleges that she was "continually mocked," *id.* at 4 (Compl. ¶ 12), "[f]rom . . . early year 2017 [until] present," Dkt. 8-2 at 17 (Drew Decl. Ex. 2 at 3); that she was "forced [] to continue working with her harassers" until her resignation, Dkt. 1 at 4 (Compl. ¶ 15); that she was "require[d] . . . to perform work that [she was] not trained for" as late as July 31, 2018, Dkt. 8-2 at 16 (Drew Decl. Ex. 2 at 4); and that she was denied reasonable disability accommodations in August and September of 2018, Dkt. 1 at 10, 24–27 (Compl. ¶¶ 47–48, Ex. A). Accordingly, because Counts I, II, and V are each based—at least in part—on discrete acts that occurred on or after June 24, 2018, the Court will not dismiss those Counts.

But it is equally clear that *some* of the alleged acts occurred before June 24, 2018, and therefore cannot provide a basis for recovery under Counts I, II, and V. *See Coleman*, 867 F.3d at 206; *Doak*, 798 F.3d at 1099. Although Bajaj argues that alleged acts preceding that date are actionable because they "are encompassed by Ms. Bajaj's timely complaint," Dkt. 9-1 at 6, the Supreme Court has made clear that, even when discrete prohibited acts are related to timely complaints, they are not actionable if they "occurred" outside of the statutory window (in this case, if they occurred before June 24, 2018). *Morgan*, 536 U.S. at 110. Bajaj may "us[e] . . . prior acts as background evidence in support of [her] timely claim[s]," but those acts are not independently actionable. *Id.* at 113; *see also Law*, 399 F.3d at 334.

Bajaj separately argues that her May 18, 2018 performance appraisal—in which she allegedly received an "inexplicably" low rating, Dkt. 1 at 5 (Compl. ¶ 17)—may serve as the basis for Counts I, II, or V, because the appraisal was "inextricably linked to the PIP issued in July, 2018," and thus the appraisal and PIP together consist of a singular, discrete "two-step personnel action." Dkt. 9-1 at 10. For support, Bajaj points to *Shelley v. Geren*, 666 F.3d 599 (9th Cir. 2012). There, the Ninth Circuit rejected the defendant's argument that the first of two

hiring decisions had not been timely exhausted because the two "decisions were not discrete employment actions, but were part of a single, two-step, hiring process." *Id.* at 605.  Defendants largely ignore this argument, responding only that, "because [Bajaj] did not seek EEO counseling about the mid-year performance appraisal within 45 days, she is precluded from pursuing a standalone retaliation claim based on that performance evaluation."  Dkt. 11 at 3.

The Court is unable to resolve this dispute at this early stage.  As an initial matter, it is unclear that Bajaj was under any obligation to contact a HUD EEO counselor following the May 2018 performance review.  "A negative performance review does not constitute an adverse employment action unless it affects the employee's terms and conditions of employment or has some other tangible consequence," *Psak v. Bernhardt*, No. 14-cv-116, 2020 WL 2849985, at *9 (D.D.C. June 1, 2020); *see also Bruder v. Chu*, 953 F. Supp. 2d 234, 241 (D.D.C. 2013).  As a result, unless and until the performance appraisal "affect[ed] [her] terms and conditions of employment," *Psak*, 2020 WL 2849985, at *9, that review was not independently actionable. Here, Bajaj alleges that she was "placed on a Performance Improvement Plan ('PIP') allegedly *due to* inexplicably being rated 'Level 1'" in her May 2018 performance appraisal.  Dkt. 1 at 5 (Compl. ¶ 17) (emphasis added).  To the extent that the PIP "affect[ed] [Bajaj's] terms and conditions of employment, *Psak*, 2020 WL 2849985, at *9—a question that is not before the Court—and that the performance appraisal was (as Bajaj argues) "inextricably linked to the PIP issued in July, 2018," Dkt. 9-1 at 10; *see also* Dkt. 1 at 5 (Compl. ¶ 17), it may be that the performance appraisal became independently actionable upon institution of the PIP, or that the performance appraisal and the PIP became jointly actionable at that time.  In either case, Bajaj's August 8, 2018 outreach to the HUD EEO counselor would fall within the relevant 45-day window following the implementation of the PIP in July 2018.

But the Court cannot make these determinations with any certainty based on the bare record before it, and so the Court must conclude that Defendants have not carried their burden in advancing their exhaustion argument with respect to the May 2018 performance appraisal. Defendants may, of course, return to this issue at summary judgment.  For all other discrete acts that occurred June 24, 2018, however, the Court concludes that Bajaj is precluded from predicating her claims in Counts I, II, and V on any such acts.[3]

The Court notes that, as Defendants acknowledge, *see* Dkt. 11 at 2, this same analysis does not apply to Count IV, in which Bajaj alleges a claim for hostile work environment, *see* Dkt. 1 at 11–12 (Compl. ¶¶ 52–61).  A hostile work environment is "different in kind" from a discrete act, because, by its very nature, it "involves repeated conduct" that can occur "over a series of days or perhaps years" that "collectively constitute one 'unlawful employment practice.'"  *Morgan*, 536 U.S. at 115 (quoting 42 U.S.C. § 2000e–5(e)(1)).  As a result, in the case of a hostile work environment claim "the employer may be liable for all acts that are part of this single claim," and, "[i]n order for the charge to be timely, the employee need only file a charge within [the statutorily-required time period] of any act that is part of the hostile work environment."  *Id.* at 118.  Bajaj may, accordingly, base her hostile work environment claim on events that occurred more than 45 days before she initiated contact with an EEO counselor.

### IV.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' partial motion to

---

[3] In their opening motion, Defendants argued that Count III—for discrimination under the Rehabilitation Act—should also be dismissed to the extent that it is based on acts that occurred more than 45 days before contact with an EEO counselor.  Dkt. 8 at 1.  But Bajaj, in her opposition, clarified that the alleged acts underlying that claim occurred "well after" the start of the statutory limitations period, Dkt. 9-1 at 5–6; *see also* Dkt. 1 at 10 (Compl. ¶¶ 47–48), and Defendants now agree that Count III should not be dismissed, *see* Dkt. 11 at 3.  The Court will, accordingly, deny Defendants' motion to dismiss Count III.

dismiss, Dkt. 8, is **GRANTED** in part and **DENIED** in part.  Defendants' motion to dismiss

Counts I, II, and V is **GRANTED** to the extent Bajaj predicates those claims on discrete acts that

occurred before June 24, 2018—a category which, as explained above, does not (at least at this

stage) include the May 2018 performance appraisal—but is otherwise **DENIED**.  Defendants'

motion to dismiss Counts III and IV, to the extent Defendants have not withdrawn any such

motion, is **DENIED**.  Defendants' motion to dismiss Count VII, Bajaj's claims for punitive

damages, and Bajaj's claims against HUD itself (rather than the Secretary) is **GRANTED**.

   **SO ORDERED**.

/s/ Randolph D. Moss<br>
RANDOLPH D. MOSS<br>
United States District Judge

March 2, 2022